**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
In re                              : Chapter 11
                                    :
BEDFORD COMMUNICATIONS, INC.,   : Case No. 10-10902 (SMB)
                                    :
               Debtor.            :
                                    :
------------------------------------------------------- x

**FINAL ORDER UNDER 11 U.S.C §§ 105, 361, 362, 363, 364 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001 (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING; AND (II) AUTHORIZING DEBTOR TO USE CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION**

The Court having held a final hearing pursuant to Federal Rule of Bankruptcy Procedure 4001 on the motions (the "Motions") of Bedford Communications, Inc., debtor and debtor in possession in the above-captioned chapter 11 case ("Debtor"), requesting that the Court enter this Order Under 11 U.S.C. §§ 105, 361, 362, 363, 364 and Federal Rule of Bankruptcy Procedure 4001 (I) Authorizing Debtor to Obtain Post-Petition Financing; and (II) Authorizing Debtor to Use Cash Collateral and Granting Adequate Protection; and the Motions having sought the following relief:

(i)       that the Court approve the Borrowing Agreement (together with all security and other related documents, the "DIP Credit Agreement") entered into between Debtor and Westburg Media Capital L.P. (the "Lender");

(ii)      that the Court authorize Debtor to borrow up to $150,000 pursuant to the DIP Credit Agreement;

(iii)     that the Court authorize Debtor's use of Cash Collateral pursuant to 11 U.S.C. §§ 105, 361 and 363;

(iv)    that the obligations incurred under the DIP Credit Agreement and Debtor's use of Cash Collateral be:   (A) pursuant to 11 U.S.C. § 364(c)(1), accorded super-priority administrative expense claims in favor of Lender, with priority over all administrative expense and other claims, including but not limited to claims under 11 U.S.C. §§ 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 552(b) and 1114; and (B) pursuant to 11 U.S.C. § 364(c)(2)-(3), secured by valid, enforceable and fully perfected liens in favor of Lender and encumbering all Debtor's and its estate's assets, with priority senior to all other liens on Debtor's and its estate's assets; provided, however, that the super-priority claims and liens described above shall be subject to the "Carve-Out" (as that term is defined below); and

(v)    that the Court order related relief as set forth in this Order; and the Court having considered the Motions, the DIP Credit Agreement, all other papers and evidence submitted to the Court in connection with the Motions, and the arguments and representations of counsel at the hearing, the Court makes the following findings of fact and conclusions of law:

A.    Jurisdiction.    The Court has jurisdiction over this case and the relief sought in the Motion pursuant to 28 U.S.C. §§ 157(b)(2)(D) and 1334.

B.    Chapter 11 Filing.    On February 22, 2010, Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, thereby commencing this chapter 11 case.C.    Notice.    Notice of the Motions and the relief requested therein, including but not limited to a sufficient description of the financing to be provided under the DIP Credit Agreement and the form of the DIP Credit Agreement, has been provided to the United States Trustee, and other interested parties.  Such notice satisfies the requirements set forth in Federal Rule of Bankruptcy Procedure 4001, and no other or further notice of the hearing is required.

SL1 985187v3/104712.00001

D. <u>Debtor's Stipulation</u>. Prior to the petition date, Debtor and Lender entered into the Borrowing Agreement dated as of January 6, 2000, as amended and modified several times thereafter (as amended, the "Pre-petition Loan Agreement"). As of February 5, 2010, the Debtor borrowed the principal sum of $4,215,243.80, plus unpaid interest and other charges totaling $1,890,585.22. Also prior to the Petition Date, and pursuant to the Loan Agreement, Debtor and Lender entered into a revolving line of credit in the principal amount of $700,000. As of February 5, 2010, the principal owed on the revolving line of credit is $770,116.67, and unpaid interest totals $324,173.23. Prior to the Petition Date, Lender advanced Debtor an additional $50,000 for Debtor's use to pay a retainer to Debtor's proposed bankruptcy counsel, and said advance has been added to the principal owed by Debtor under the Loan Agreement and memorialized in the Demand Note dated February 17, 2010.

Without prejudice to the rights of all other parties, Debtor acknowledges the obligations owing by Debtor to Lender under the Pre-petition Loan Agreement are secured by the liens granted to Lender as set forth in the Pre-petition Loan Agreement, Security Agreement, and the modifications ("Pre-petition Collateral").

E. <u>Purpose and Necessity of Financing and Use of Cash Collateral</u>. Debtor requires the use of cash collateral and financing to be provided under the DIP Credit Agreement to fund Debtor's cash requirements and ongoing business operations, and without such financing Debtor, its estate and its creditors alike will suffer immediate and irreparable harm. All such parties will benefit from Court approval of the Motions. As such, the financing will serve to preserve Debtor's estate and maximize the return to all stakeholders. The ability of Debtor to continue in business so it can market its business and assets or to otherwise reorganize depends on obtaining the relief sought in the Motions.

SL1 985187v3/104712.00001

F.     Financing Alternatives.  Debtor has been unable to obtain the financing to be provided under the DIP Credit Agreement on an unsecured basis allowable as an administrative expense pursuant to 11 U.S.C. § 364(a); nor solely on a super-priority basis with priority over all administrative expense claims pursuant to 11 U.S.C. § 364(c)(1); nor solely on a secured basis with liens on unencumbered assets pursuant to 11 U.S.C. § 364(c)(2).  Nor has Debtor been able to obtain financing on any other terms or from any other sources, despite reasonable efforts to do so.

G.     Good Faith.  The DIP Credit Agreement and the financing to be provided under the agreement is the product of arms' length negotiations between Debtor and Lender and is being entered into by the parties in good faith, as that term is used in 11 U.S.C. § 363(m).

H.     Adequate Protection.  Pursuant to the terms of the DIP Credit Agreement and this Order, Debtor has provided adequate protection with respect to any lienholders entitled to such protection.

I.     Other Cause.  Other good and sufficient cause has been shown to justify granting the relief requested in the Motions.

WHEREFORE, IT IS HEREBY ORDERED THAT:

1.     Approval.  Debtor is authorized to enter into the DIP Credit Agreement, in substantially the form appended to this Order, and to borrow up to $150,000 in a multiple advance revolving credit facility and to otherwise perform in accordance with the agreement. The DIP Credit Agreement and the obligations set forth therein shall constitute and are hereby deemed to be legal, valid and binding obligations of Debtor, enforceable against Debtor in accordance with their terms, and Debtor is authorized to obtain financing pursuant to the terms set forth in the DIP Credit Agreement.  Debtor is further authorized to use Cash Collateral only

4

pursuant to the terms and conditions set forth in this Order and the budget annexed to this Order, the terms of which are adopted herein. The term of either the DIP Credit Agreement or Debtor's use of Cash Collateral may be extended, or the Budget may be modified at any time, by written agreement of Debtor, Lender and the Creditors' Committee without further order of the Court.

        2. <u>Debtor Authorization</u>. Debtor is hereby authorized and directed to: (A) do and perform all acts to make, execute and deliver the DIP Credit Agreement, including all security agreements, mortgages, financing statements and other related documents necessary or desirable to implement the financing to be provided under the DIP Credit Agreement and other terms set forth in the agreement; (B) take any other actions provided for in the DIP Credit Agreement or deemed appropriate by Lender to effectuate the terms and conditions of the DIP Credit Agreement and this Order, including without limitation any amendment or modification of the DIP Credit Agreement pursuant to a Court order, or without further court Order in such form as Debtor and Lender agree; <u>provided, however</u>, that notice of any amendment or modification shall be filed with the Court and provided to the United States Trustee, counsel to the Creditors' Committee and other parties entitled to notice, which parties will have no less than five (5) days from the date of such notice within which to object in writing, and if such objection is made then the amendment or modification shall be permitted only pursuant to a Court order; (C) comply with all provisions of the DIP Credit Agreement, including without limitation the payment and satisfaction in full of all obligations when due in accordance with the terms of the DIP Credit Agreement; (D) use the financing to be provided under the DIP Credit Agreement as permitted in the agreement and this Order; (E) repay the financing to be provided under the DIP Credit Agreement as set forth in the agreement and this Order, including payment to Lender without Court order, of any and all reasonable fees, costs, charges, commissions and expenses,

5

including reasonable attorneys' fees, as set forth in the DIP Credit Agreement and this Order, provided that the Office of the United States Trustee and the Creditors' Committee are provided with copies of all such invoices and shall have ten (10) days to object to payment of same; and (F) grant the claims, liens, and adequate protection provisions provided for in the DIP Credit Agreement and this Order.

3. <u>Super-Priority Claims / Liens</u>. Debtor's obligations under the DIP Credit Agreement shall be paid when due, without defense, offset, reduction or counterclaim shall: (A) pursuant to 11 U.S.C. § 364(c)(1), constitute allowed super-priority claims against Debtor with priority over all administrative expense and other claims including without limitation claims or expenses under 11 U.S.C. §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a) and 507(b); and (B) be secured by valid, enforceable and fully perfected liens on substantially all Debtor's and its estate's assets, wherever located, whether real or personal, tangible or intangible, now existing or hereafter acquired or created, including the proceeds of such assets, all as set forth in the DIP Credit Agreement ("DIP Collateral"), with those liens having priority senior to any and all other liens in Debtor's and estate's assets; <u>provided, however</u>, that the super-priority claims and liens granted herein shall be subject to the Carve Out; <u>and provided further,</u> that the DIP Collateral, the liens and super-priority administrative expense claim granted herein shall not include any claims or causes of action under sections 502(d), 544, 545, 546, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code and any other avoidance actions under chapter 5 of the Bankruptcy Code and the proceeds thereof and any property received thereby, whether by judgment, settlement, or otherwise (collectively, "Avoidance Actions"). The super-priority claims and senior liens granted herein shall remain at all times of a higher priority and senior to the rights of Debtor, any chapter 7 or 11 trustee, and any secured, administrative priority, unsecured or other claims of any

party in this case under title 11 of the United States Code, and the liens granted herein shall not become subject, junior or subordinated to any "priming" or other lien, nor made pari passu with any other lien, under 11 U.S.C. § 364 or otherwise, in this case, including to any lien that is avoided and preserved for the benefit of Debtor's estate under 11 U.S.C. § 551, except as expressly provided in the DIP Credit Agreement and this Order.

4.    Carve-Out/506(c) Waiver.    The "Carve-Out" shall mean unpaid professional fees and expenses allowed by the Court pursuant to 11 U.S.C. §§ 330 and/or 331 in this or any subsequent case in an aggregate amount not to exceed $250,000 for all professionals retained by the Debtor and Creditors' Committee; allowed fees and disbursements for any chapter 7 trustee appointed in this or any subsequent case in an aggregate amount not to exceed $10,000 (and further provided that a chapter 7 trustee may seek to surcharge collateral of other secured creditors); and fees payable pursuant to 28 U.S.C. §1930(a)(6) to the United States Trustee.  In addition, commencing the week ending April 9, 2010, the Debtor shall escrow the sum of $5,000 (or such other amount as may be agreed upon in subsequent budgets) (the "Professional Fee Escrow Funds"), provided Debtor first satisfies its other obligations as set forth in the budget.    Debtor shall remit the Professional Fee Escrow Funds to Debtor's bankruptcy counsel, who will establish a separate trust account for the Professional Fee Escrow Funds.  **In consideration for the Carve-Out, Debtor and the Creditors' Committee irrevocably waive their rights to surcharge DIP Collateral or Pre-petition Collateral under 11 U.S.C. § 506(c) or otherwise.  Without prejudice to the rights of any other parties, including the Debtor's estate, the Debtor further waives and releases any rights to contest the amount, validity, priority and extent of the claims, security interests and liens granted to Lender under the Pre-Petition Loan Agreement and any other rights or claims against**

7

**Lender of any nature.**

5.     Challenges to Lender's Lien.  Except for the Debtor, nothing contained in this Order shall prejudice the rights of the Creditors' Committee or any other party in interest with requisite standing, to investigate, object to or to challenge (a) the validity,  extent, perfection or priority of the security interests, mortgages and other liens of the Lender in and to the Pre-petition Collateral, or (b) the extent, validity, allowability, priority or status of the Pre-petition Debt; provided, however, the Creditors' Committee and any other party in interest shall have sixty (60) days following the date of entry of this Order to assert such challenge, after which time the Creditors' Committee and any other party in interest waive and release any such claim.  The Creditors' Committee is hereby granted, and shall have, standing to assert the rights permitted by this Paragraph, without further order of this Court.  Nothing herein shall limit or impair the rights of a Creditors' Committee, or any other party in interest with requisite standing, to seek an extension of the challenge period and any such extension may be obtained by written consent of the Lender or by motion to the Court for cause shown.

6.     Perfection.  Effective as of the "Closing" of the DIP Credit Agreement, the liens granted herein shall be perfected by operation of law, and Lender shall not be required to enter into, obtain, give, file or record any agreement, consent, waiver, financing statement, mortgage, deed of trust, leasehold mortgage, notice or other instrument in any jurisdiction (including but not limited to trademark, copyright, trade-name or patent assignment filings with the United States Patent and Trademark Office, the United States Copyright Office or any similar agency with respect to intellectual property, or any consent from any licensor or similarly situated party), nor take any other action in order to perfect and otherwise validate and enforce those liens.  Notwithstanding the above, Lender shall be authorized (but not required) to enter

8

into, obtain, give, file, record or take any other action in order to validate and perfect the liens granted herein, and the automatic stay provisions of 11 U.S.C. § 362 are modified to the extent necessary so as to permit Lender to do so.

7. <u>No Other Indebtedness / Liens</u>. No indebtedness, other than trade debt or business expenses incurred in the ordinary course of business, shall be incurred by Debtor in this case unless and until: (A) Lender gives its express written consent, or (B) the DIP Credit Agreement has been terminated and all financing and other obligations incurred under the agreement have been paid in full. No liens shall attach to any of Debtor's or its estate's assets in this case unless and until: (A) the DIP Credit Agreement has been terminated and all obligations incurred under the agreement have been paid in full; or (B) Lender gives its express written consent, except to: (i) the liens granted herein, (ii) any involuntary liens that attach to the property of the Debtor's estate under applicable law, and (iii) any other liens existing on the petition date and that relate back to the petition date may be perfected pursuant to 11 U.S.C. § 362(b)(3). Each party to the DIP Credit Agreement, for so long as any obligations under the DIP Credit Agreement shall be outstanding, irrevocably waives all rights pursuant to 11 U.S.C. § 364(c) or otherwise to: (i) approve any claim of equal or greater priority than the obligations under the DIP Credit Agreement; or (ii) grant any lien of equal or greater priority than the liens granted herein.

8. <u>Fees and Expenses of Lender</u>. Debtor is authorized and shall timely pay the fees, expenses and compensation provided for in the DIP Credit Agreement, including without limitation all reasonable legal fees and expenses payable to Lender and its counsel, to the extent invoiced and due, provided that the Lender shall provide copies of all invoices or other documentation evidencing the requested fees and expenses to the Debtor, counsel to the

9

Creditors' Committee and the United States Trustee, who shall have ten (10) calendar days' from receipt of written notice and copies of invoices for such legal fees and expenses to object to same prior to any payment by the Debtor.

9.    Liability and Indemnification.    By entering into the DIP Credit Agreement, Lender shall have no liability to any third party, and shall not be deemed to be in control of the operations of Debtor, or to be acting as a "responsible person" or managing agent with respect to the operation or management of Debtor.  Lender shall have the indemnification rights and limitations as set forth in Section 10 of the Borrowing Agreement.

10.    Event of Default.  Upon the occurrence of an Event of Default (as defined under the DIP Credit Agreement) (i) in the case of payment default, five (5) calendar days' notice, and (ii) in the case of any other Event of Default, fifteen (15) calendar days' notice, to counsel for the Debtor, counsel to the Creditors' Committee and the United States Trustee, the Lender may declare the unpaid principal amount and accrued interest on the Loan and all other Obligations immediately due and payable upon a failure to timely cure said Event of Default within the time set forth herein, and Lender may seek to immediately terminate Debtor's authority to use Cash Collateral.  Lender shall seek relief from the automatic stay by application to the Bankruptcy Court to enforce its rights as secured creditor.

11.    Reporting and Inspection Requirements.  Debtor shall furnish to Lender and to counsel to the Creditors' Committee copies of all monthly operating statements filed with the United States Trustee on the date such statements are filed.  In addition, not later than the 15th day following the last day of each month during the term of the DIP Credit Agreement, Debtor shall provide Lender and counsel to the Creditors' Committee with a report on the Cash Collateral used by Debtor, which report shall also include all cash receipts and disbursements, all

10

accounts receivable generated, all inventory acquired, and payables incurred. Debtor shall permit Lender's representatives reasonable access during normal business hours to Debtor's books and records for purposes of inspection and copying.

12. <u>Successors and Assigns</u>. The DIP Credit Agreement and this Order shall be binding on Debtor and Lender, each of their respective successors and assigns, and any trustee appointed in this case.

13. <u>Survival</u>. The provisions of this Order, including the priority and validity of all claims and liens in favor of Lender, and any actions taken pursuant hereto shall survive entry of any other order which may be entered in this case, including any order: (A) confirming any plan of reorganization, (B) converting this from a case under chapter 11 to a case under chapter 7, (C) appointing a trustee or examiner, or (D) dismissing this case, and the terms and provisions of this Order, as well as the priorities in payment granted pursuant to this Order and the DIP Credit Agreement shall continue in full force and effect notwithstanding the entry of any such other order or any earlier termination of the Debtor's authorization to use Cash Collateral, until all of the obligations under the DIP Credit Agreement are satisfied and discharged in accordance with their terms.

14. <u>Adequate Protection</u>. To the extent of any actual diminution in the value of collateral securing pre-petition obligations and liens, including but not limited to the obligations and liens in favor of Lender under the Pre-petition Loan Agreement, the Lender shall be granted replacement liens on all Debtor's and its estate's assets not already subject to those liens and/or claims under 11 U.S.C. § 507(a), with priority over all claims allowable under 11 U.S.C. §§ 507(a)(1) and 503(b). The replacement liens and claims described herein shall be subject to the Carve-Out fees and expenses. In addition, Lender shall have (a) first priority

SL1 985187v3/104712.00001

replacement security interests in and liens on cash and cash equivalents acquired after the filing of the petition, including accounts receivable; (b) first priority additional security interests in and liens on previously unencumbered assets of Debtor; and (c) first priority security interests in and liens on causes of action under Bankruptcy Code section 549 on account of collateral encumbered by the post-petition security interest and liens in favor of Lender granted under this Agreement. The adequate protection liens and administrative expense claims granted herein shall not include liens or claims on Avoidance Actions or the proceeds thereof and no administrative expense claim granted herein shall be paid from Avoidance Actions or the proceeds thereof.

15.    <u>Good faith</u>.  Lender, having been found to be a lender in good faith, shall be entitled to the full protection of 11 U.S.C. § 364(e), and the claims, liens and priorities created or authorized in the DIP Credit Agreement and this Order are so created and authorized pursuant to 11 U.S.C. § 364(c) and are entitled to the benefits and protections of 11 U.S.C. § 364(e).

16.    <u>No Waiver</u>.  Except to the extent otherwise provided in the DIP Credit Agreement and this Order, neither the DIP Credit Agreement nor this Order shall be construed as a waiver or relinquishment of any rights that Lender or Debtor may have.  No failure or delay on the part of Lender in the exercise of any power, right or privilege under the DIP Credit Agreement or under any other document shall impair such power, right or privilege or be construed to be a waiver of any default or acquiescence therein, nor shall any single or partial exercise of any such power, right or privilege.  All rights and remedies existing under the DIP Credit Agreement and the other documents are cumulative to, and not exclusive of, any rights or remedies otherwise available.

17.    <u>Right to Credit Bid</u>.  Lender shall have all the rights provided in 11 U.S.C.

§ 363(k), provided that nothing in this paragraph shall be deemed to (a) expand the Lender's rights under section 363(k); (b) prejudice or impair the rights of the Creditors' Committee to challenge the nature, extent, validity, priority, perfection or amount of the Lender's liens, security interests and claims; or (c) release the Lender from any causes of action which can be brought by or on behalf of the Debtor's estate relating to any of the foregoing.

18.     <u>Reversal, Modification, Vacated or Stayed Order</u>.  If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, Lender shall have all of the rights as set forth in 11 U.S.C. § 364(e).

19.     No cost or expense which is incurred by the Debtor or any other person in connection with or on account of the preservation or disposition of the Collateral or the Pre-Petition Collateral shall be chargeable to the Lender, the Cash Collateral, the Collateral or the Pre-Petition Collateral under Bankruptcy Code Section 506(c) or otherwise.  The Cash Collateral Budget and the Lender's consent to use the Cash Collateral to fund the Cash Collateral Budget pursuant to this Order is in lieu of any claim under Bankruptcy Code Section 506(c) and all of the waivers and releases running in favor of the Lender hereunder.

20.     The creation, scope, perfection and priority of the replacement liens and the Super-Priority Claim shall not be altered or impaired by (a) any plan of reorganization or by any further order which may hereafter be entered or (b) any order permitting the incurrence of indebtedness pursuant to Section 364 of the Bankruptcy Code or otherwise, unless the Lender consents to the terms of such order.

21.     Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Lender, that the replacement liens, the Super Priority Claim or other adequate protection granted to the Lender adequately protect the Lender for the Debtor's use of

13

Cash Collateral or other use of the Pre-Petition Collateral.

22.  No Marshalling.  Neither the Lender nor the DIP Collateral shall be subject to the doctrine of marshalling.

23.  Applicable law.  Nothing in this Order shall be construed to excuse Debtor from compliance with its obligation under applicable state and federal laws, including but not limited to Section 115 of the United States Copyright Act, 17 U.S.C. § 115.

24.  Terms of this Order Shall Govern.  To the extent that the DIP Credit Agreement or other agreements differs from this Order, the terms of this Order shall control.

25.  Pursuant to Bankruptcy Rule 6004(h), this Order shall become effective immediately.

26.  Retention of Jurisdiction.  This Court retains and reserves jurisdiction to enforce all provisions of this Order.


Dated: April 19, 2010
       New York, New York          /s/  STUART M. BERNSTEIN
                                    UNITED STATES BANKRUPTCY JUDGE

SL1 985187v3/104712.00001